IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                        No. Crim. 16-3477 MCA/SCY

NEWMAN PEERY, and
PATRICK EHLERS,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION OF DEFENDANTS' JOINT MOTION TO SUPPRESS EVIDENCE (ECF NO. 33)

Defendants in this case jointly seek to suppress evidence of all methamphetamine seized on August 4, 2016. ECF No. 23.  Defendants argue that this seizure was the product of an illegal search.  On October 27, 2016, the Court referred this matter to me to recommend an ultimate disposition. ECF No. 27. After having considered the parties' briefs, I conclude for each Defendant that evidence found in the bag each Defendant was carrying should be suppressed only as to the Defendant carrying the bag.  Because neither Defendant has standing to challenge the search of his co-defendant's bag, I conclude that neither Defendant should be able to suppress evidence of methamphetamine found in the other's bag.

### I.  FACTUAL FINDINGS

**A Hearing Is Not Necessary**

The facts necessary to decide the present motion are not in dispute.  The Court agrees with the United States insofar as it argues, "whether this Court finds that the evidence should be suppressed or not turns almost entirely on questions of law . . . and as such, a hearing is not required." ECF No. 30 at 11.  Similarly, Defendant Ehlers argues, "with the facts not in dispute and the government's failure to provide a standard inventory procedure, the Court may grant Mr.

1

Ehler's Motion to Suppress without a hearing." ECF No. 36 at 11.  Finally, Defendant Peery did

not request a hearing.  Because a hearing is not necessary to develop the factual record with

regard to the arguments presented, I make my recommendation without holding a hearing. *See*

*United States v. Glass*, 128 F.3d 1398, 1408-09 (10th Cir. 1997) ("[A]n evidentiary hearing is

only required when the motion to suppress raises factual allegations that are sufficiently definite,

specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact

going to the validity of the search are in issue."); *United States v. Pettigrew*, 468 F.3d 626, 638

(10th Cir. 2006) (rejecting the defendant's argument that an evidentiary hearing was necessary

where the "Government conceded the facts as related by [the defendant]").  Accordingly, I base

my recommendation on the facts set forth below.[1]

**Circumstances of Search**

On August 4, 2016, Defendants were involved in a single vehicle rollover crash on

Interstate 25, around mile marker 185. ECF No. 30 at 1.  Valencia County Sheriff's Office

Deputy Benjamin Lankasky responded to the crash. *Id*. On arrival, he ran the truck's license

plate through the National Crime Information Center ("NCIC") and found that it had been

reported stolen out of Arizona. *Id*. Defendants claimed the truck was lent to them by their

employer and said they neither knew nor had reason to suspect that the vehicle was stolen. *Id*. at

5.  "After, among other things, speaking with Defendants' purported employer and inspecting the

vehicle's ignition Deputy Lankasky took Defendants at their word." *Id*. Thus, Deputy Lankasky

determined that Defendants ultimately were not chargeable for the stolen vehicle. *Id*. at 1.  While

Deputy Lankasky was speaking to Defendants Peery and Ehlers, a third man arrived on the scene

---

[1] These facts are taken from the United States' Response (ECF No. 30), and the Drug Enforcement
Agency's Report of Investigation (ECF No. 37-2).  Although Defendants have not explicitly agreed to
each of the facts below, neither have they disputed them.  Even accepting the facts as set forth by the
United States, however, I conclude that the United States has failed to demonstrate that the warrantless
searches at issue were legal.

to provide Defendants a ride. ECF No. 37-2.  According to the Drug Enforcement Agency

Report of Investigation, Deputy Lankasky then

> told Peery and Ehlers to grab their own bags from the wrecked vehicle. Peery
> proceeded to grab a black and blue backpack and a black roller bag.  Ehlers
> proceeded to grab a black and blue roller bag.  After Peery and Ehlers grabbed
> their bags Deputy Lankasky advised them he needed to check the contents to
> ensure that there was nothing belonging to the vehicle owner.

 ECF No. 37-2; ECF No. 30 at 1. Deputy Lankasky "checked the contents of the luggage that

Defendants claimed as theirs to ensure that the bags didn't actually belong to the vehicle's

rightful owner." *Id*. He did this without obtaining consent from Defendants or a search warrant.

*Id*. Upon checking Defendants' luggage, Deputy Lankasky discovered just under one kilogram of

methamphetamine, which is the subject of the instant case. *Id* at 2. More specifically, Defendant

Ehler's bag contained approximately 56 grams of methamphetamine and Defendant Peery's bag

contained approximately 928 grams of methamphetamine. ECF No. 2 at 2.

## II.  ANALYSIS

The parties do not dispute that Defendant Lankasky conducted a warrantless search of

bags Defendants claimed to be theirs.  As a result, "[t]he Government bears the burden of

demonstrating the reasonableness of the warrantless seizure." *United States v. Herrera*, 444 F.3d

1238, 1242 (10th Cir. 2006).  The United States makes three arguments in defense of the

warrantless search and seizure.  First, the United States argues that Defendants lack standing to

challenge the search.  Second, the United States argues that the search did not violate the Fourth

Amendment because it was not investigative in nature. Finally, the United States argues that the

evidence should not be suppressed because excluding it would not deter future police

misconduct.  Notably, the United States does not argue that probable cause existed to justify the

search.  The Court will address each of the United States' arguments in turn.

**Each Defendant Has Standing to Challenge the Search of the Bag He Claimed to Own**

I conclude Defendants had standing to challenge the search of the bags they claimed to be theirs.  The United States acknowledged that "Deputy Lankasky . . . checked the contents of the luggage *that Defendants claimed as theirs*." ECF No. 30 at 1 (emphasis added). Notwithstanding the fact that Defendants claimed ownership in their respective bags, the United States argues that because the truck was stolen and Defendants could not establish a link between themselves and the vehicle's registered owner, they have no standing to challenge the search of the truck or the luggage that was inside of it. *Id*. at 5. With regard to the luggage each Defendant personally removed from the vehicle and claimed to own, the United States argument is unpersuasive for at least three reasons.[2]

First, prior to searching the bags and in anticipation that Defendants were about to leave with the person who showed up to give them a ride, Deputy Lankasky asked Defendants to grab their own bags and remove them from the vehicle.  Thus, prior to the search, each Defendant indicated that they owned the bags in which the United States claims they had no expectation of privacy.  And, the United States makes no assertion that Defendants were not, in fact, the true owners of the bags they claimed to be theirs.

Second, a review of Tenth Circuit precedent demonstrates that Defendants have standing. *United States v. Edwards* involved the search of a rental car the defendant was not authorized to drive and that was rented in the name of his companion. *United States v. Edwards*, 632 F.3d 633, 641 (10th Cir. 2001). Although the Tenth Circuit determined that the defendant did not have standing to challenge the search of the car itself, it found he had standing to challenge the search

---

[2] Whether Defendants have standing to challenge the search of the truck is not before me and, therefore, I do not address this argument.

of closed bags stored in the trunk of the rental car because "[the defendant] clearly manifested a subjective expectation of privacy in the bags and that his expectation was one that society has recognized as reasonable." *Id*. at 643. Similarly, by taking their bags out of the truck, identifying themselves as the owner of the bags, and expressing their intent to leave with the bags, Defendants here manifested a subjective expectation of privacy in their respective bags that society recognizes as objectively reasonable. *See United States v. Martinez,* 983 F.2d 968, 973 (10th Cir. 1992) (stating that although defendant had no standing to challenge the search of the trunk of a car "she may have possessed a reasonable expectation of privacy over the contents of the luggage").

Third, the logical extension of the United States' argument would lead to absurd results. The government argues that, even though the search occurred after Defendants removed their bags from the vehicle and claimed them as their own, they had no standing to challenge the search of the bags because those bags had previously been in a stolen vehicle. Under this reasoning, this supposed lack of standing would follow Defendants wherever they went, whether to a hotel that night or to any other location they might travel. I reject this reasoning and conclude that by taking the bags out of the vehicle at Officer Lankasky's direction in anticipation of leaving the scene, and by claiming ownership in their respective bags, Defendants established standing in regard to their respective bags.

**The Searches Were Investigative In Nature**

The United States argues that Deputy Lankasky's search was not done for investigative purposes but, instead, was done as part of his community caretaking duties. ECF No. 30 at 6-7. Specifically, the United States argues that Deputy Lankasky

was looking for any identifying documents or materials, clothing that generally matched the build of Defendants, and/or contents that were consistent with

5

> Defendants' accounts of their travel plans simply to determine the bags' true
> ownership.  At most, Deputy Lankasky was ensuring that no further crime of
> stolen property occurred, consistent with protocol and his caretaking duties; he
> was not investigating a crime he believed took place.

ECF No. 30 at 8.  The United States defies common sense in arguing that a law enforcement

officer who conducts a search of a person's bag for stolen property is not investigating a crime.

Under the United States' reasoning, law enforcement officers could legally conduct warrantless

searches into the bags of any person that officer thought might have been shoplifting.  I find that,

in ordering Defendants to submit their bags for a search and then searching those bags, Deputy

Lankasky was investigating whether evidence of a crime would be found in those bags.

The cases the United States cites fail to advance an argument to the contrary.  In the first

case, *United States v. Strahan*, a police officer gathered papers that were on the floor of a van

believed to be stolen and later reviewed those papers to see if he could determine who owned the

van. 674 F.2d 96, 98-100 (1st Cir. 1982).  The defendant, who had been driving the van,

conceded that the officer's acts of  arresting him, taking custody of the van, and conducting an

inventory of the contents of the van, were all proper. *Id*. at 99.  Further, the defendant made no

claim that the "inventory" was a pretext used to conceal an investigatory police motive. *Id*.

Instead, the defendant argued that the detailed examination of the paperwork went beyond what

was allowed as part of the inventory search. *Id*.  The First Circuit found that the police officer's

need to determine who owned the van justified his initial examination of the documents. *Id*. at

100.

The present case presents a different situation. First, unlike the present case, *Strahan*

involved an inventory search.  Given that Deputy Lankasky asked Defendants to retrieve their

bags from the truck so that they could leave with those bags, the search of the bags cannot be

justified as part of an inventory search.  Inventory searches occur when police take property into

their possession. *See South Dakota v. Opperman*, 428 U.S. 364 (1976). Inventory searches are justified by the need to safeguard against theft or careless handling of recovered articles, to protect police from false allegations they lost or stole property, and to protect police from potentially dangerous material in articles held at the station house. *See Illinois v. Lafayette*, 462 U.S. 640 (1983).  These justifications do not exist with regard to property not in the possession of law enforcement.  Further, to avail itself of the inventory exception, the United States must establish that the particular search was conducted in accordance with an established policy. *United States v. Reyes-Vencomo*, 866 F.Supp.2d 1304, 1331 (D.N.M. 2012).  The United States makes no attempt to demonstrate, and could not demonstrate, that the Valencia County Sheriff's Office had a regular policy of inventorying bags they had no intention of taking into their possession. *See United States v. Lugo*, 978 F.2d 631, 636 (10th Cir. 1992) ("When the police acquire temporary custody of a vehicle, a warrantless inventory search of the vehicle does not offend Fourth Amendment principles so long as the search is made pursuant to 'standard police procedures' and for the purpose of 'protecting the car and its contents.'"); *United States v. Moraga*, 76 Fed. App'x. 223, 228 (10th Cir. 2003) ("Inventory searches must be conducted according to standardized procedures and the police must act in good faith and cannot search for the sole purpose of investigation.").

Second, *Strahan* did not involve the opening of a closed container the defendant claimed to be his.  Instead, the police officer in *Strahan* merely looked at papers found on the floor of the van to determine who owned the van. *Id*. at 99.  Here, Deputy Lankasky searched closed luggage in which Defendants demonstrated an expectation of privacy.

Third, the police officer in *Strahan* did not examine the documents to determine if the van, or anything in the van, was stolen.[3]  Instead, the police already had legal possession of the van, did not know who owned the van (the van had no registration), and had a legitimate non-investigative purpose to look at documents found in the van. *Id*. at 100.  The United States does not assert that Deputy Lankasky searched the luggage so that he could determine who owned the vehicle. Indeed, the United States does not even assert that the owner of the vehicle was unknown.  Instead, it argues that Deputy Lankasky was trying to determine the true ownership *of the bags and of items within the bags*, to ensure that no further crime of stolen property occurred. ECF No. 30 at 7.  Given that Defendants possessed and claimed to own these bags, to search the bags for evidence of stolen property Deputy Lankasky would need probable cause to believe the bags contained evidence of such theft. The United States makes no such probable cause assertion.

The next case the United States cites, *United States v. O'Bryant,* involved a briefcase that had been abandoned and left next to an overflowing trash dumpster. *United States v. O'Bryant*, 775 F.2d 1528, 1529 (11th Cir. 1985).  As the Eleventh Circuit noted, no expectation of privacy exists in trash left outside. *Id*. at 1534.  Further, the search was an inventory search which, as set forth above, did not occur in the present case.  Because the present case does not involve trash, abandoned property, or an inventory search *O'Bryant* is unhelpful.  Thus, neither the cases the United States cites nor the arguments it makes establish that the search for stolen items in this case was part of a non-investigative community caretaking function.

---

[3] The officer did later closely examine the documents for evidence of fraud, but the First Circuit held that the plain view doctrine justified this closer examination. *Id*. at 100. The plain view doctrine is not at issue in the present case.

**Binding Authority Requires the Suppression of Evidence**

The United States argues that the Court should not suppress evidence in this case because doing so would not deter future wrongful police conduct.  Specifically, the United States argues that it was reasonable to search bags in a stolen vehicle to determine their ownership.  This argument, however, misses the crucial inquiry.  Given that Defendants claimed ownership of the bags and had an expectation of privacy in those bags, Deputy Lankasky needed probable cause to search the bags.  The United States does not argue that probable cause existed.  Absent probable cause, a warrantless search into a bag a defendant possesses and owns requires the suppression of evidence incriminating that defendant found in the bag.[4] *United States v. Nicholson*, 144 F.3d 632 (10th Cir. 1998).

**The Alternative Argument the United States Makes In Footnote Four of Its Response Fails**

In footnote four of its response, the United States argues, "[s]hould the Court find that the search was indeed investigative, however, there are sufficient facts to support an objectively reasonable suspicion of illegal activity." ECF No. 30 at 8 n.4 (internal quotations marks omitted).  This argument fails for at least two reasons.  First, arguments raised in a footnote are deemed waived. *See Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) (stating that issues raised in footnotes, "unaccompanied by some effort at developed argumentation, are deemed waived.").  Second, even if reasonable suspicion existed, this would be insufficient to justify a search of the bags.  Such an invasion of privacy requires the existence of probable cause.  And, the United States explicitly disavowed the argument that probable cause existed to

---

[4] If probable cause to search an automobile exists, police may also, without a warrant, search containers found in the automobile that are capable of storing the object of the search. *United States v. Ross*, 456 U.S. 798, 825 (1982).  Because the United States does not argue that probable cause existed to search the car, however, the Court need not address whether the bags could be searched without a warrant pursuant to the automobile exception.

look in the bags for evidence related to the stolen vehicle or some other crime.  Specifically, the

United States wrote

> [i]n this case, Deputy Lankasky searched Defendants' bags not for any
> investigative purpose . . . but to ensure that the bags Defendants were claiming
> as theirs were not, in fact, the property of whoever rightfully owned the vehicle.  If,
> on the other hand, Deputy Lankasky still had some reason to believe that
> Defendants were responsible for the stolen vehicle and his search was intended to
> turn up more evidence, or if he was looking for evidence of another crime, his
> actions would clearly appear to be much more investigative.  *But such was not the
> case here*.

ECF No. 30 at 7 (emphasis added).  As set forth above, I disagree with the United States'

assertion that Deputy Lankasky's act of searching the bags for stolen property was not

investigative.  Further, in connection with footnote four of its response, I find that the United

States has declined to assert that probable cause to search the truck for evidence related to its

theft also justified the search of luggage that was initially found in the truck.

### Defendants Do Not Have Standing to Challenge the Search of a Co-Defendant's Luggage

In their initial briefs the parties did not address the issue of whether Defendant Ehlers has

standing to challenge the search of Defendant Peery's bag or vice versa.  To the extent the

United States made a standing argument, it discussed Defendants collectively and solely

addressed whether the status of the truck as being stolen deprived Defendants of standing.  The

United States never asserted that one defendant has no standing to challenge the search of

another defendant's bag.  Indeed, in its recitation of the underlying facts, the United States

grouped the Defendants and the bags together and never indicated what was found in each

respective bag.  Nonetheless, a review of the complaint (which no party attached as an exhibit to

their briefs) revealed that Defendant Ehler's bag contained approximately 56 grams of

methamphetamine and Defendant Peery's bag contained approximately 928 grams of

methamphetamine. ECF No. 2 at 2.

Although the United States did not address whether each Defendant has standing to challenge the search of his co-defendant's bag, it is the defendant who carries the burden to prove standing. *United States v. Johnson*, 584 F.3d 995, 998 (10th Cir. 2009) ("The burden of proof is on the defendant to demonstrate that he has a reasonable expectation of privacy in the place searched to establish his standing.").  In their initial briefs Defendants did not address, much less establish, that they had standing to challenge the search of their co-defendant's bag.

In *Combs v. United States*, the Supreme Court addressed a similar situation in which neither the United States nor the defendant addressed a standing issue at the district court level. *Combs v. United States,* 408 U.S. 224, 227-28 (1972). On appeal before the Sixth Circuit, however, the United States challenged the defendant's standing to challenge the search. *United States v. Combs* 446 F.2d 515 (6th Cir. 1991) (vacated).  Although standing had not been addressed at the district court level, the Sixth Circuit agreed that the defendant had no standing and affirmed the district court on that basis without addressing the merits of the defendant's claim that the search and seizure was invalid. *Combs*, 446 F.2d at 516.

The Supreme Court vacated the Sixth Circuit's decision and remanded the case to the district court to develop a factual record and rule on the standing issue. *Combs*, 408 U.S. at 227-28.  In so doing, the Supreme Court stated

> petitioner's failure to make any such assertion [of a possessory or proprietary claim to the searched premises], either at the trial or at the pretrial suppression hearing, may well be explained by the related failure of the Government to make any challenge in the District Court to petitioner's standing to raise his Fourth Amendment claim. In any event, the record now before us is virtually barren of the facts necessary to determine whether petitioner had an interest in connection with the searched premises that gave rise to 'a reasonable expectation (on his part) of freedom from governmental intrusion' upon those premises . . . re-examination of the validity of the warrant in light of the Government's present position on that issue would then be appropriate to resolve the question whether evidence [should be suppressed].

*Id*. (internal citations and quotations omitted).  Similarly, the parties in this case initially failed to address an issue of standing.  To avoid the possibility that this failure would require remand on appeal, the I ordered the parties to submit supplemental briefs. ECF No. 38.

In his two page supplemental brief, Defendant Peery generally argues that both Defendants are victims of one wrongful government action and that the only appropriate remedy for this invasion of privacy is to suppress all of the evidence against both Defendants. ECF No. 39 at 2.  Defendant Ehlers, however, does more specifically address the issue of standing. Specifically, he cites the Supreme Court case of *McDonald v. United States*, 335 U.S. 451 (1948), in support of a derivative standing argument.  ECF No. 41 at 2.  The United States, after reasserting its position that neither Defendant has standing to challenge either search, argues that neither defendant has standing to challenge the search of a co-defendant's bag.  On this latter point, I agree with the United States.

In a 2010 unpublished decision, the Tenth Circuit considered the same argument that Defendant Elher now makes, albeit in a habeas case. The defendant in *United States v. Rodriguez-Rivera*, relying on *McDonald,* argued that "when one defendant succeeds in suppressing evidence, that evidence is also inadmissible against his codefendants, even if they lack independent standing, because such evidence is 'prejudicial not only to the defendant who made the motion but to his co-defendant as well.'" *United States v. Rodriguez-Rivera,* 372 Fed.Appx. 844, 849 (10th Cir. 2010) (unpublished).[5]  In rejecting the defendant's argument, the Tenth Circuit first

---

[5] A court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

noted that *McDonald* contained no majority opinion.  *Id*. at 848.  The Tenth Circuit next pointed

out that *McDonald* involved a situation in which two defendants were tried together whereas the

defendants in the case before it were only *indicted* together.  *Id*. at 849.  The Tenth Circuit then

stated "Mr. Rodriguez-Rivera gives no reason to think that [the *McDonald*] rationale should be

applied outside the context of a trial.  Indeed, the opposite conclusion seems more natural." *Id*.

The cases Defendant Ehler cites in support of his argument also arise in the context of trial and so

are inapplicable to the present analysis.

  The Tenth Circuit further noted, "even though the Supreme Court has not expressly

overruled *McDonald*, it appears to have limited *McDonald* to its facts."  *Id*.  In sum, the Tenth

Circuit concluded that reasonable jurists could not debate the district court's conclusion that the

defendant had no standing to challenge the vehicle search at issue because he had neither

possession nor control of the vehicle.  *Id*. at 848-49.  Although unpublished, the Tenth Circuit's

decision in *Rodriguez-Rivera* is persuasive and refutes Defendant Ehler's current argument.

  Further, while Defendant Ehler's read of *McDonald* might have gained traction in 1948,

subsequent Supreme Court decisions make such a reading untenable in 2017.  In *Wong Sun v.*

*United States*, the Supreme Court determined that narcotics held to be inadmissible against a

codefendant nonetheless could be admitted against Wong Sun because the "seizure of this heroin

invaded no right of privacy of person or premises which would entitle Wong Sun to object to its

use at trial." *Wong Sun v. United States*, 371 U.S. 471, 492 (1963).  The Supreme Court

reaffirmed this principal in *Alderman v. United States*, where it stated, "we adhere to these cases

and the general rule that Fourth Amendment rights are personal rights which, like some other

constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165,

174 (1969).  The Court further endorsed the idea that "it is entirely proper to require of one who

seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy." *Id*. at 173 (internal quotation and citation omitted).  Regarding *McDonald*, the Court wrote that *McDonald* "is not authority to the contrary. It is not at all clear that the McDonald opinion would automatically extend standing to a codefendant. Two of the five Justices joining the majority opinion did not read the opinion to do so and found the basis for the codefendant's standing to be the fact that he was a guest on the premises searched." *Id*. at 173 n. 7.

The Court later relied on *Alderman* to hold that passengers in an automobile had no standing to challenge the search of an automobile they did not own and which led to the discovery of a rifle and shells. *Rakas v. Illinois*, 439 U.S. 128, 134-35 (1978).  The Court stated, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Id*. at 134 (internal citations omitted).

As a final example, in *United States v. Padilla*, the Supreme Court rejected the Ninth Circuit's co-conspirator rule that a "coconspirator's participation in an operation or arrangement that indicates joint control and supervision of the place searched establishes standing." *United States v. Padilla,* 508 U.S. 77, 80 (1993).  In rejecting the Ninth Circuit's co-conspirator rule, the Court reiterated, "[i]t has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth

14

Amendment rights were violated by the challenged search or seizure." *Id*. at 81 (emphasis in original).  In the present case, neither Defendant has met his burden of establishing that *his* Fourth Amendment rights were violated by the search of the other's bag.  As a result, Defendants only have standing to challenge the search of their own bag.

This conclusion does present an unusual situation in which each Defendant faces criminal liability not for the drugs found in his own bag, but instead for the drugs found in the bag of the other.  Nonetheless, this is the result dictated by clear Supreme Court precedent.  As the Court stated in *Rakas*,

> Each time the exclusionary rule is applied it exacts a substantial social cost for the vindication of Fourth Amendment rights.  Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected . . ..  [M]isgivings as to the benefit of enlarging the class of persons who may invoke that rule are properly considered when deciding whether to expand standing to assert Fourth Amendment violations.

*Rakas*, 439 U.S. at 137-38.  Because Defendants seek to expand standing beyond the parameters the Supreme Court has defined, their arguments must be rejected.

**III.  CONCLUSION**

For the above stated reasons, I recommend that you grant Defendants' joint motion to suppress evidence to the extent each Defendant seeks to exclude evidence found in his own bag.  I recommend, however, that you deny each Defendant's motion to suppress evidence found in a bag in which his co-defendant claimed ownership.

UNITED STATES MAGISTRATE JUDGE

15

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**