IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                             Crim. No. 16-3477 MCA/SCY

NEWMAN PEERY, and
PATRICK EHLERS,

    Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on the *United States' Objections to Proposed Findings and Recommended Disposition of Defendants' Joint Motion to Suppress Evidence* [Doc. 49], *Defendant Newman Peery's Objections to Magistrate Judge's Proposed Findings and Recommended Disposition of Defendants' Joint Motion to Suppress Evidence* [Doc. 47], and *Defendant Patrick Ehlers' Objection to the Proposed Findings and Recommended Disposition of Defendants' Joint Motion to Suppress Evidence* [Doc. 48]. The Court has considered the written submissions of the parties, the record in this case, the applicable law, and is otherwise fully advised. With regard to the *Proposed Findings and Recommended Disposition* [Doc. 44] the Magistrate Judge entered, the Court has conducted a de novo review of those portions to which objections have been made, 18 U.S.C. § 636(b)(1), and finds itself in agreement with the Magistrate Judge, as set forth more fully below.

**I.**    **The Court Overrules the United States' Objections**

The United States objects to the Magistrate Judge's determination that each Defendant has standing to challenge the search of the bag that Defendant possessed. Doc. 49 at 2-6. Although Defendants through their actions represented that they owned the bags they possessed

1

at the time of the search, the United States argues that possession of a bag combined with a representation of ownership is insufficient to confer standing. The Court disagrees. Alternatively, the United States objects that the search of the bags was not related to any criminal investigatory purpose. Doc. 49 at 6-9. Again, the Court disagrees. The Court concludes that Deputy Lankasky violated Defendants' Fourth Amendment rights when he searched the bags they were carrying and that this violation requires that evidence found in each bag be suppressed as to the Defendant carrying that bag.

    A.  <u>Each Defendant Has Standing to Challenge the Search of the Bag That Defendant Possessed</u>

In determining that each Defendant has standing to challenge the search of his respective bag, the Magistrate Judge relied on *United States v. Edwards*, 632 F.3d 633 (10th Cir. 2001), where the Tenth Circuit determined that a defendant who did not have standing to challenge the search of a car nonetheless had standing to challenge the search of closed bags stored in the trunk of the car because "[the defendant] clearly manifested a subjective expectation of privacy in the bags and that his expectation was one that society has recognized as reasonable." Doc. 44 at 4 (quoting *Edwards*, 632 F.3d at 643). The United States attempts to distinguish *Edwards* by arguing that "Defendants grabbed the bags not from a closed and locked trunk, as in *Edwards*, 632 F.3d at 642, but from the truck's main cabin." Doc. 49 at 5. The location of the bags when they were searched in the present case, however, undermines rather than supports the United States' argument. Defendants claimed ownership in the respective bags by, at law enforcement's direction, taking their respective bags out of the truck and then, based on law enforcement's representations that they were free to leave, preparing to leave with a third party. As the Magistrate Judge pointed out, that the bags had once been in a stolen vehicle does not forever thereafter make them subject to searches without probable cause – for instance, if Defendants

took their bags to a hotel later that night, law enforcement would not be able to search the bags in the hotel lobby without a warrant or probable cause. Doc. 44 at 5.

The United States does not argue that law enforcement could conduct a warrantless search of the bags at a hotel later that night. Doc. 49 at 6. It does argue, however, that the circumstances under which law enforcement could search the bags without a warrant turns on the degree to which Defendants identified the bags as theirs. Specifically, the United States argues, "the more facts Defendants could show that established the bags as theirs, the more reasonable their expectation of privacy would be." Doc. 49 at 6. Without citation to any authority, the United States then asserts that Defendants' act of grabbing their bags out of the truck (as Deputy Lankasky directed them to do) "is hardly sufficient" for them to establish standing in the bags. Doc. 49 at 6. The Court disagrees.

In an effort to provide an example of what more Defendants could have done to demonstrate the bags they grabbed were theirs, the United States suggests if Defendants "demonstrated they had a change of clothing or other overnight essentials in the bags, the reasonableness of their expectations of privacy would be bolstered even further." Doc. 49 at 6. There are at least two problems with this suggestion. First, Defendants did have a change of clothing in their respective bags – evidence tying Defendants to the bags that law enforcement felt significant enough to include in its arrest warrant affidavit. *See* Doc. 2 at 3. Second, the suggestion that a person should have to show the contents of a bag to law enforcement to demonstrate that the bag belongs to them, in an effort to prevent law enforcement from seeing what is inside the bag, is absurd. The practical equivalent of a search would occur if a person was required to show law enforcement the contents of a bag to demonstrate standing to challenge the search of the bag.

3

Contrary to the United States' argument, the case for standing each Defendant here has with regard to the bag he possessed is stronger than the case the defendant who established standing in *Edwards* had. The present facts do not involve bags found in a car; they involve bags in Defendants' physical possession and over which Defendants expressed a possessory interest. The Court agrees with the Magistrate Judge that each Defendant has standing to challenge the search of the bag he carried, claimed to own, and evidence indicates did own.

B. Deputy Lankasky's Search Was Investigative

The United States next argues that, although Deputy Lankasky was looking in the bags to determine whether they contained stolen property, he was not doing so as part of a criminal investigation. Doc. 49 at 6-9. In his PFRD, the Magistrate Judge pointed out that under the United States' rationale, a "law enforcement officer[] could legally conduct warrantless searches into the bags of any person that officer thought might have been shoplifting." Doc. 44 at 6. The United States asserts that the Magistrate Judge's hypothetical "overlooks the government's representation that the purpose was to ensure that no *further* crime of stolen property occurred." Doc. 49 at 9 (internal quotation and citation omitted) (emphasis in original). "The PFRD's conclusion", the United States argues, "conflates investigating a crime that took place with preventing a crime from taking place. Ensuring that no further crime of stolen property occurs is different from investigating whether Defendants did in fact steal any property." Doc. 49 at 9. This distinction, the United States continues, "places Deputy Lankasky's actions much more in the realm of community caretaking, and not investigation." Doc. 49 at 9. The Court rejects the United States' argument for two reasons.

First, even accepting Deputy Lankasky's assertion that he was looking in the bags for stolen items rather than drugs, the existence of stolen items would reveal a present rather than (or

4

perhaps, in addition to) a future crime. If the bags Defendants carried contained stolen items, the government easily could prosecute Defendants in connection with their possession of the stolen items. In such a situation, Defendants would be unlikely to prevail at trial by arguing that, even though they were caught red-handed trying to walk away with stolen items in their bags, they could not be convicted because they had not yet actually committed any crime. Further, even if Deputy Lankasky was motivated to look in the bags to make sure the theft of the bags did not continue, as opposed to looking in the bags for evidence of a theft that had already occurred, it is unrealistic to think that evidence obtained during the search would not be used in a prosecution initiated in connection with the theft that had already occurred.

Second, even if Defendants did not complete the crime of theft or possession of stolen property, taking substantial steps toward the commission of these crimes would still constitute a crime – namely, attempted theft or attempted possession of stolen property. The Court agrees with the Magistrate Judge that law enforcement's act of searching the bags for evidence they were stolen constitutes a criminal investigative function.

C. <u>Suppression of Evidence Found in Each Defendant's Bag, As It Relates to the Defendant Who Possessed That Bag, Must Be Suppressed In An Effort to Deter Future Police Misconduct</u>

The United States argues that, "even if Deputy Lankasky's search of Defendants' luggage violated Defendants' Fourth Amendment rights, the Court should not suppress the evidence here because doing so would not deter future police misconduct." Doc. 49 at 9-10. Specifically, the United States first argues, "[t]o search the bags in an effort to ascertain ownership is reasonable, and it is difficult to imagine that suppressing evidence here would alter future police responses to stolen vehicles." Doc. 49 at 10-11. This argument, however, presumes that the search was not done for a criminal investigative purpose. Because the Court, in the previous section, rejected the

5

presumption on which the United States' argument is based (that the search was part of a community caretaking function rather than part of a criminal investigation), the Court rejects the United States' argument that suppression would wrongly seek to deter police from engaging in community caretaking functions that are unrelated to criminal investigations.

The Court does not dispute that law enforcement's act of attempting to determine the ownership of bags abandoned in a stolen vehicle can sometimes be part of a community caretaking function. But this case does not involve bags abandoned in a stolen vehicle. Here, Deputy Lankasky asked Defendants to grab their bags after having indicated to Defendants that they would be permitted to leave with those bags. When he then ordered Defendants to turn over their bags so that he could search them to ensure they did not belong to the vehicle's rightful owner (assuming that was his true motivation), he was investigating whether Defendants were attempting to steal the bags. Doing so constituted a criminal investigation.

The United States' second argument is that "searching luggage found in a vehicle reported as stolen in an effort to verify ownership is standard operating procedure, particularly where, as here, the vehicle needs to be towed." Doc. 49 at 11. As the Magistrate Judge set forth in his PFRD, however, the United States failed to provide a standard inventory procedure. Doc. 44 at 7. It may be that the Valencia County Sheriff's Office has a standard inventory procedure for bags it takes possession of after they are found in stolen vehicles. The Sheriff's Office, however, did not take possession of the bags at issue in this case; instead, it released those bags to Defendants. As the Magistrate Judge concluded, the United States has not established that the Sheriff's Office has a standard inventory procedure it employs *after* releasing bags to the persons claiming ownership in those bags. Doc. 44 at 6-8. Thus, the Court agrees with the Magistrate Judge that the United States has failed to establish that the search in this case was part of a

standard inventory search. Therefore, suppression of evidence in this case does not punish police for conducting inventory searches.

Next, the United States argues, "[i]f people were allowed to walk away from situations involving stolen vehicles carrying luggage from those vehicles, the potential for others' belongings to be lost forever would be appreciably higher." Doc. 49 at 11. This argument misapprehends the basis for the Court's decision. The Court is not suggesting that police simply let occupants of stolen vehicles walk away when they are suspected of carrying luggage containing stolen property. Instead, the Court is saying that, when police tell occupants of a stolen vehicle who are not suspects in the vehicle theft that they may grab their bags and leave, police must at least have probable cause to then search those bags once the occupants gain possession of the bags and attempt to leave.

The United States' attempt to justify the search of the bags by pointing out that they had been in a stolen truck is further undermined by the fact that it made no attempt to argue that probable cause existed to justify the search of the bags. *See* Doc. 44 at 3, 8, 9, 9 n. 4, 10 (noting United States not seeking to justify search based on the existence of probable cause). The truck's status as having been stolen is relevant to a probable cause determination. That determination, however, is not relevant to the Court's analysis because the United States did not argue that probable cause existed to justify the search. Thus, it is irrelevant to the Court's present analysis whether probable cause to search the bags existed based on the status of the vehicle as stolen, a belief the bags contained stolen items, a belief the bags contained illegal drugs, or for any other reason.

Finally, the Court is mindful of the Supreme Court's admonition in *Herring v. United States*, that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that

7

exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." 555 U.S. 135, 144 (2009). The United States, however, asks too much. Again, it does not assert that probable cause existed to justify the searches at issue. Instead, it asserts that the search of the bags was part of a community caretaking function that did not require the existence of probable cause. Ratifying the search of the bags as part of a community caretaking function would provide law enforcement with the means to end run the Fourth Amendment's probable cause requirement by simply characterizing a search for evidence of a crime as part of a community caretaking function. To avoid such an end run, the Court finds that the evidence found in each bag must be suppressed with regard to the Defendant who claimed a possessory interest in that bag.

## II.     The Court Overrules Defendant Peery's Objections

Defendant Peery raises a new argument in his objections: law enforcement illegally seized his person and, therefore, the Court should suppress the methamphetamine found in both bags as the product of that illegal seizure. The Court rejects this argument as both untimely and meritless. The Court also rejects Defendant Peery's argument that the Magistrate Judge wrongfully denied him the opportunity for a hearing.

### A.  Objection Regarding Request for Hearing

First, the Court addresses Defendant Peery's objection to the Magistrate Judge's statement that he did not request a hearing. Doc. 47 at 2-3. Defendant Peery did not file his own Motion to Suppress. Instead, he filed a one page unopposed motion to join his co-defendant's motion to suppress. *See* Doc. 24. As the Magistrate Judge noted, the reply brief for the motion to suppress that Defendant Peery joined stated, "with the facts not in dispute and the government's failure to provide a standard inventory procedure, the Court may grant Mr. Ehlers' Motion to

Suppress without a hearing." Doc. 36 at 11. The Court acknowledges that Defendant Peery's one-page motion to join his co-defendant's motion to suppress did contain a request for a hearing. Doc. 47. In deciding Defendant Peery's Motion to Suppress, the Court concludes that what Defendant Peery requested in connection with his motion to suppress should control over an inconsistent request he made in his motion to join.

Further, the lack of a hearing did not prejudice Defendant Peery. A hearing was not necessary to resolve disputed facts because the Magistrate Judge's recommendation did not turn on the resolution of disputed facts. More importantly, Defendant Peery was not prejudiced because he prevailed on the arguments he made in his Motion to Suppress. Specifically, the Magistrate Judge agreed with Defendant Peery's argument that Deputy Lankasky's search of the bags violated the Fourth Amendment. The Magistrate Judge then asked the parties to brief the issue of standing – something Defendants had not addressed in their Motion to Suppress. After the completion of this supplemental briefing, the Magistrate Judge rejected Defendants' standing arguments. Thus, the issue on which Defendant Peery failed to prevail was not one raised in his Motion to Suppress. And, even if he had raised this issue in his Motion to Suppress, resolution of the standing issue turns on analysis of Supreme Court case law that can be decided without the need for a hearing.

    B.  <u>Defendant Peery's Current Argument is Untimely</u>

In his Objections to the Magistrate Judge's PFRD, Defendant Peery argues that, "even where defendants lack standing to challenge a particular search, they may challenge the legality of their detention and seek suppression of evidence found subsequently that is the fruit of the unlawful detention." Doc. 47 at 4. Defendant Peery, however, did not make this argument in his original motion to suppress and, therefore, has waived it. *See United States v. Garfinkle*, 261

F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an attempt to preserve this argument, Defendant Peery acknowledges Defendants in their motion to suppress "primarily focused on the improper search of the bags that resulted in the discovery of methamphetamine . . . ." Doc. 47 at 2. Nonetheless, he argues "defendants claimed as well that they had been unlawfully seized" and, in support, cites to portions of the motion's factual basis where Defendants alleged that Deputy Lankasky did not permit them to leave, subjected them to a non-consensual seizure, and unreasonably delayed them. Doc. 47 at 2. He does not, however, cite to any portion of the brief where he argued that all evidence should be suppressed as to all Defendants because the evidence was the product of the unlawful seizure of their persons. Because Defendants did not make this argument in their opening brief, they waived it. *See Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012) ("Arguments not clearly made in a party's opening brief are deemed waived."); *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (observing that "a party waives issues and arguments raised for the first time in a reply brief" (internal quotation marks omitted)).

    C.  <u>Even If Defendant Peery's Argument Were Not Untimely, It Would Fail</u>

In addition to being untimely, Defendant Peery's new argument is unpersuasive. Importantly, because the Court is already suppressing the evidence found in the bag Defendant Peery carried as this evidence relates to Defendant Peery, Defendant Peery's new argument is only relevant to evidence that can be used against him – the methamphetamine found in his co-defendant's bag. Recognizing this, Defendant Peery cites the Tenth Circuit's decision in *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001) in support of his argument that "even where defendants lack standing to challenge a particular search, they may challenge the legality

of their detention and seek suppression of evidence found subsequently that is the fruit of unlawful detention." Doc. 47 at 4. *DeLuca*, however, undermines rather than supports Defendant Peery's position.

The defendant in *DeLuca* was the non-owner passenger in a car that had methamphetamine in its trunk. *DeLuca*, 269 F.3d at 1130. The district court determined that, although the initial stop of the defendant was justified, his continued detention was not. *Id*. at 1131. The district court further found "'a direct, palpable link between the detention of the car's occupants and discovery of the package in the car's trunk' and, therefore, that the methamphetamine must be suppressed as the 'fruit of the illegal detention.'" *Id*. at 1132. The Tenth Circuit disagreed and reversed.

The Tenth Circuit determined that for defendant to establish the required factual nexus between his illegal detention and the evidence seized, he "must show that the methamphetamine would never have been found but for *his*, and only his, unlawful detention." *Id*. at 1133 (emphasis in original). The district court erred because its application of the factual nexus requirement "would effectively allow Mr. DeLuca to assert the Fourth Amendment rights of third parties." *Id*. Thus, the Tenth Circuit concluded, "[t]he government correctly argues that Mr. DeLuca had no reasonable expectation of privacy in the search of the trunk, and the district court erred in concluding that because a passenger may challenge his own detention incident to a traffic stop, any evidence seized thereafter is necessarily linked to that detention without first satisfying the [factual nexus] requirements of *Nava–Ramirez*." *Id*. at 1134. "Just as Fourth Amendment rights are personal and a defendant has the burden to demonstrate that his rights have been violated, he must also demonstrate a causal link between the violation and the contraband." *Id*. (internal citation omitted). Because Defendant Peery has failed to even argue

11

that the methamphetamine discovered in Defendant Ehlers' bag would never have been found but for Mr. Peery's, and only Mr. Peery's unlawful detention, he has failed to meet his burden under Tenth Circuit precedent.[1] *See also United States v. Nava-Ramirez*, 210 F.3d 1128, 1132 (10th Cir. 2000) (even assuming defendant was illegally detained at time of search, defendant "failed to meet his burden of proving a factual nexus between his detention and the evidence found in the trunk, [and therefore] this court cannot suppress that evidence as the fruit of the purportedly unlawful detention.").

### III.    The Court Overrules Defendant Ehlers' Objections

In his objections, Defendant Ehlers largely repeats the arguments he made in his supplemental brief addressing the issue of standing. Specifically, Defendant Ehlers continues to rely on *McDonald v. United States*, 335 U.S. 451 (1948) and disagrees with the Magistrate Judge's analysis of *McDonald* and its progeny. The Court rejects Defendant Ehlers' analysis and agrees with the analysis of the Magistrate Judge. Because the Magistrate Judge analyzed *McDonald* and its progeny, the Court will not repeat the Magistrate Judge's analysis in this Opinion. The Court will, however, address two points that Defendant Ehlers makes.

First, the Court recognizes that the Supreme Court has never explicitly rejected its plurality opinion in *McDonald.* It disagrees, however, that *McDonald* applies as broadly as Defendant Ehlers argues. As the Tenth Circuit pointed out in an unpublished, but persuasive, opinion the Magistrate Judge summarized, the *McDonald* rationale seems to be limited to situations in which two defendants are tried together. *See United States v. Rodriguez-Rivera,* 372 F. App'x 844, 849 (10th Cir. 2010) (unpublished). In limiting the reach of *McDonald*, the

---

[1] Because Defendant Peery failed to meet his burden of establishing a factual nexus regardless of whether he was free to leave at the time Deputy Lankasky searched the bags, the Court need not address whether Defendants were free to leave without their bags or, instead, were seized at the time Deputy Lankasky searched their bags.

Magistrate Judge did not, as Defendant Ehlers asserts, fail to recognize "any remaining vitality to *McDonald*." *See* Doc. 48 at 7.

Second, Defendant Ehlers argues that evidence of methamphetamine found in his bag against his co-defendant would prejudice him at trial because the jury will consider this evidence as it relates to Mr. Ehlers regardless of what limiting instruction the Court gives the jury. Doc. 48 at 9. This argument assumes that Defendant Ehlers and Defendant Peery will be tried together and so is better addressed as part of a motion for separate trials, should Defendant Ehlers choose to file such a motion. Because the situation over which Defendant Ehlers expresses concern will only arise in a joint trial and the issue of whether Defendants should be tried jointly or separately is not yet before the Court, the Court will defer analysis of this issue until it is squarely raised and briefed.

**WHEREFORE, IT IS HEREBY ORDERED** that the United States' *Objections* and Defendants' *Objections* are overruled.

**IT IS FURTHER ORDERED** that the Magistrate Judge's *Proposed Findings and Recommended Disposition* [Doc.44] are adopted as the decision of the Court.

**SO ORDERED** this 31st day of May, 2017.

_____
M. CHRISTINA ARMIJO
CHIEF UNITED STATES DISTRICT JUDGE